1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3

Feb 28, 2022

SEAN F. McAVOY, CLERK

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

ROBERT LEE DONEY,

8

Plaintiff,

9

v.

10

JEFFEREY UTTECHT,
Superintendent of CRCC,

11

12

Defendant.

NO:  4:20-CV-5156-RMP

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13

BEFORE THE COURT, without oral argument, is Defendant Superintendent

14

Jefferey Uttecht's Motion for Summary Judgment, ECF No. 43.  Plaintiff Robert

15

Lee Doney, who is proceeding pro se, did not respond within the 30 days allotted by

16

Local Civil Rule 7(c)(2), so the Court proceeds to a decision without awaiting a

17

reply from Defendant Superintended Uttecht.[1]  Having reviewed the motion, the

18

record, and the relevant law, the Court is fully informed.

19

20

[1] The Ninth Circuit recognizes "that a pro se prisoner must be given fair notice of

21

the requirements of Rule 56" for summary judgment motions.  *Rand v. Rowland*,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

Plaintiff, an inmate in the custody of the Washington State Department of Corrections, alleges that Defendant violated Plaintiff's statutory and constitutional rights by denying him access to the prison sweat lodge and smudge pad, rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1; the Free Exercise Clause under the First Amendment to the United States Constitution; and the Religious Freedom Clause under article I, section 11 of the Washington State Constitution. ECF No. 8 at 5–6.  He seeks $7 million in compensatory and/or punitive damages as well as declaratory relief.  *Id* at 6–8. Superintendent Uttecht moves for summary judgment, arguing that (1) he is entitled to qualified immunity from damages and (2) Plaintiff fails to present evidence to support a viable First Amendment claim.  ECF No. 43.  For the reasons given below, Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted.[2]  At the time of filing his Amended Complaint for relief under 42 U.S.C. § 1983, Plaintiff was an

---

154 F.3d 952, 962 (9th Cir. 1998).  Here, Defendant provided such notice, including informing Plaintiff that a response opposing summary judgment must be filed within 30 days of receipt of the summary judgment motion or as directed by the Court.  *See* ECF No. 45-6.

[2] Plaintiff did not file a response to Defendant's Motion for Summary Judgment, nor did he file a Statement of Disputed Material Facts.  The Court therefore

1    inmate at Coyote Ridge Corrections Center ("CRCC").[3]  Plaintiff asserts that he is

2    an adherent of Native American religion and alleges that Defendant violated his

3    rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),

4    42 U.S.C. § 2000cc-1, the First Amendment's Free Exercise Clause, article I, section

5    11 of the Washington State Constitution, and Department of Corrections ("DOC")

6    policy.[4]  ECF No. 8.  Specifically, Plaintiff asserts that his free exercise rights were

7    violated based on Defendant's policy of suspending access to the prison sweat lodge

8    and smudge pad during the COVID-19 pandemic.  *Id.* at 5–6.  He also argues that

9    Defendant's policy of banning matches and lighters in prison cells violates those

10   same rights.  *Id.* at 6.

11        CRCC is the largest prison in Washington State and has the "capacity to house

12   2,468 male incarcerated individuals."  ECF No. 45 at 2.  The prison is comprised of

13   two housing facilities: the MSC main facility and the MSU minimum facility.  *Id.*

14   Both facilities maintain "a sweat lodge and Native American sweats may occur

15

16   _____

     considers Defendant's Statement of Facts undisputed and admitted to the extent

17   those facts are consistent with applicable rules.  LCivR 56(e).

18   [3] As of April 27, 2021, Mr. Doney's address was changed to a different

     Washington State correctional facility.  ECF No. 37 at 2 n.1.

19   [4] Although Plaintiff states that his rights have been violated under DOC policy, he

20   does not cite to a specific DOC policy.  Accordingly, the Court considers only

21   Plaintiff's RLUIPA, First Amendment, and article I, section 11 claims.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3

twice a month, resources permitting, in addition to quarterly Change of Season sweats." *Id.*

Beginning in March 2020, in response to the spread of the novel COVID-19 pandemic, the DOC Secretary Steve Sinclair "canceled all religious annual events involving outside guests." *Id.* Sweat lodge services ran in both facilities on March 25, 2020, each with over 50 inmates participating in either the general area or inside the respective lodges. ECF No. 45 at 2–3. In mid-April, modified sweat lodges began, which included the proper use of personal protective equipment and social distancing. *Id.* at 3. Throughout April, CRCC chaplains recorded "religious group participant numbers" in multiple religious services, as documented in the "COVID-19 Plans" for religious services at both CRCC facilities. *Id.*; *cf.* ECF No. 45-2.

By late-May 2020, 24 CRCC inmates had tested positive for COVID-19. ECF No. 45 at 3. In response, prison chaplains sent a memo "articulating their concerns and recommending that all current religious gatherings be halted at [both] CRCC [facilities]." *Id.*; *cf.* ECF No. 45-3. On May 25, 2020, "CRCC Associate Superintendent Andrew Sawyer suspended all religious programming until further notice." ECF No. 45 at 4. By the end of the month, 73 inmates had tested positive for COVID-19. *Id.* All housing units at the MSC facility were placed on quarantine status on June 2, 2020. *Id.* COVID-19 cases for CRCC inmates reached their peak in July 2020. *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1    In November 2020, modified sweat lodge services restarted at the smaller

2  (MSU) facility.  *Id.*  However, the main (MSC) facility did not restart modified

3  sweat lodge services until April 7, 2021, over ten months after the MSC sweat lodge

4  first closed due to the pandemic.  *Id.*  As of August 4, 2021, both facilities permit

5  fully vaccinated inmates to "have a full 'pre-COVID-19' type of sweat lodge

6  experience"; unvaccinated inmates continue to have access to "modified sweat lodge

7  practices."  *Id.*

8    At the time of filing the instant motion, "CRCC has had 438 confirmed cases

9  of incarcerated individuals who have tested positive for the COVID-19 virus" and

10  "there have been 275 confirmed cases" among CRCC staff.  ECF No. 45 at 5.

11    On September 8, 2020, Plaintiff filed a complaint against Defendant

12  Superintendent Uttecht, as well as the Washington State DOC and Governor Jay

13  Inslee, based on the denial of Plaintiff's access to the prison sweat lodge and smudge

14  pad beginning in March and April 2020.  ECF No. 1.  The Court determined that it

15  lacked jurisdiction over Plaintiff's claims against both Governor Inslee and DOC

16  and ordered Plaintiff to amend his complaint to remove those parties; Plaintiff

17  complied.  ECF Nos. 7, 8.  The Court also determined that Plaintiff must bring his

18  RLUIPA claim against Defendant Superintendent Uttecht in his official capacity,

19  and only for injunctive relief.  ECF No. 7 at 9.  Defendant subsequently filed an

20  answer to the amended complaint.  ECF No. 14.

21

1      Several months later, Defendant moved to dismiss Plaintiff's amended

2  complaint for failure to state a claim.  ECF Nos. 32.  The Court denied the motion,

3  relying in part on Plaintiff's assertion that he was denied access to the sweat lodge

4  and smudge pad for at least nine months.  ECF No. 37 at 6.  Defendant now moves

5  for summary judgment, asserting qualified immunity and failure to present a viable

6  First Amendment claim.  ECF No. 43.

7                            **LEGAL STANDARD**

8      Summary judgment is appropriate when "the movant shows that there is no

9  genuine dispute as to any material fact and the movant is entitled to judgment as a

10  matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

11  317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A genuine dispute exists where

12  "the evidence is such that a reasonable jury could return a verdict for the nonmoving

13  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

14  Ed. 2d 202 (1986).  A fact is material if it "might affect the outcome of the suit

15  under the governing law."  *Id.*  "Factual disputes that are irrelevant or unnecessary

16  will not be counted."  *Id.*

17      The moving party bears the initial burden of demonstrating the absence of a

18  genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  If the moving party

19  meets this challenge, the burden shifts to the nonmoving party to "designate specific

20  facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ.

21  P. 56(e)).  "A non-movant's bald assertions or a mere scintilla of evidence in his

favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987). Courts construe *pro se* pleadings liberally. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

## DISCUSSION

A. Mootness

The Court first considers whether Plaintiff's claims are moot. A claim is rendered moot "where the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985). Although neither party addresses mootness, the Court *sua sponte* considers the issue because "[f]ederal courts lack jurisdiction to decide moot cases." *Id.* As noted above, Plaintiff no longer resides at CRCC. An incarcerated individual's transfer or "release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).

Relevant precedent recognizes a few exceptions to the mootness doctrine. First, a claim is not moot if it is "capable of repetition, yet evad[ing] review." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). However, this particular

1    exception rarely, if ever, is applied in the context of prison transfers. *See, e.g.*,

2    *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (claims for injunctive relief

3    rendered moot by inmate's transfer to a different prison absent showing of

4    "reasonable expectation of returning" to original prison); *see also Hood v. Crabtree*,

5    242 F.3d 381, No. 99-35678, 2000 WL 1598943, at *1 n.6 (9th Cir. 2000) (reading

6    the circuit's prior holding in *Dilley* as suggesting that the "capable of repetition, yet

7    evading review exception" does not apply to an inmate's § 1983 claim where the

8    inmate was transferred to another prison).

9         In this case, Plaintiff does not show that there is a reasonable likelihood that

10    he will be transferred back to the CRCC facility and similarly denied use of the

11    sweat lodge and smudge pad.  Moreover, Defendant indicates that both modified

12    and full sweat lodge services have been available at both CRCC facilities since

13    April 2021, and Plaintiff fails to dispute this material fact.  ECF No. 44 at 4.

14    Accordingly, the Court finds that Plaintiff's request for declaratory relief has been

15    rendered moot by his transfer to a different state prison.  The Court next considers

16    Plaintiff's alternative request for monetary damages for his constitutional claims.[5]

17    

18    [5] The Court does not consider Plaintiff's asserted RLUIPA claim for monetary

19    damages.  As this Court's previous Order noted, "money damages are not available

      as a remedy for RLUIPA violations."  ECF No. 7 at 9 (citing *Sossamon v. Texas*,

20    563 U.S. 277, 288, 293, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011)).  Given that

21    Plaintiff's request for declaratory relief is moot, no suitable relief remains for his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

B.  Validity of Plaintiff's First Amendment Claim

Plaintiff asserts that the Defendant's actions in denying him use of the sweat lodge from April 2020 until the filing of his complaint in November 2020 caused Plaintiff to suffer "religious pain" and prevented him from cleansing "evil spirits off of [his] body and mind."  ECF No. 8 at 7.  Accordingly, Plaintiff requests $7 million in monetary damages "or an amount to be determined by a jury."  *Id.* at 8. Defendant counters that the "temporary denial of the use of the prison smudge pad and sweat lodge to mitigate the spread of COVID-19, does not amount to a First Amendment violation."  ECF No. 43 at 9.

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) (incorporating the Free Exercise Clause against the states).  To assert a valid free exercise claim, a party "must show that the government action in question substantially burdens the person's practice of her religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  A substantial burden "must have a 'tendency to coerce individuals into

---

RLUIPA claim.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's RLUIPA claim and only Plaintiff's federal and state constitutional claims for money damages remain for the Court's consideration.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

acting contrary to their religious beliefs.'" *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)).

An individual's "right to exercise religious practices and beliefs does not terminate at the prison door." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987). Nevertheless, such a right "is necessarily limited by the fact of incarceration." *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993). Accordingly, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). The Court in *Turner* identified four factors to help guide this determination: (1) whether there is "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" or whether "the existence of obvious, easy alternatives" suggests "an 'exaggerated response' to prison concerns." *Id.* at 89–90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586, 104 S. Ct. 3227, 82 L. Ed. 2d 438 (1984)).

1    Here, there is no question that the denial of sweat lodge and smudge pad

2    services for almost one year placed a substantial burden on Plaintiff's ability to

3    exercise his Native American religious practices, including the cleansing of evil

4    spirits.  Defendant does not dispute this finding, turning instead to the prison's

5    "legitimate penological interest in mitigating the spread of COVID-19."  ECF No.

6    43 at 11.  The Court considers Defendant's argument in the context of the four

7    applicable *Turner* factors.

8    First, Defendant argues that there is a clear connection between the limitation

9    and, later, the temporary suspension of "all religious programming" at CRCC with

10    the increase in COVID-19 cases for CRCC inmates and staff alike.  *Id.*  Second,

11    Defendant notes that there were no "readily available alternatives" during this time

12    because the prison's priority was to mitigate the spread of COVID-19 "by limiting

13    movement of inmates and staff within the prison."  *Id.*  To the extent Plaintiff

14    suggests that access to matches and a lighter in his cell would have created an

15    acceptable alternative for use of a smudge pad, ECF No. 8 at 6, the Court rejects

16    such a notion because of the potential for a fire to endanger other inmates.  The

17    Ninth Circuit recently held that a prison violated a Muslim prisoner's right to

18    religious exercise under RLUIPA by barring the use of scented oil in inmate cells.

19    *Johnson v. Baker*, 23 F.4th 1209, 1212–13 (9th Cir. 2022).  However, critical

20    differences exist between *Johnson* and the instant case.

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

To start, the *Johnson* case involved a claim under RLUIPA, which applies a heightened standard of scrutiny to the prison regulation at issue as opposed to the more deferential reasonableness standard applied in the instant case.[6]  *Compare Johnson*, 23 F.4th at 1216 (analyzing whether the "regulation is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of serving that interest") *to Jones*, 791 F.3d at 1032 (discussing the need to afford deference to prison officials by examining prisoners' free exercise rights under a reasonableness standard that is less restrictive than the standard typically applied to asserted violations of fundamental constitutional rights).  Applying the heightened standard, the *Johnson* court rejected the State's general interest in "prison security[,]" determined that the prohibition on scented oils was not the least restrictive means in serving such a general interest, and noted that testimony suggesting that prayer oil could "cover the smell of contraband" lacked the necessary detail to justify an outright prohibition.  23 F.4th at 1217.

Here, in contrast, Defendant need show only that the disruptions to religious programming during the COVID-19 pandemic, including the refusal to provide Plaintiff with matches in his cell, served a legitimate penological interest.  *Jones*, 23

---

[6] Although the Plaintiff in this case raised a RLUIPA violation in his Amended Complaint, the Court already concluded that his request for declaratory relief is moot and RLUIPA claims do not allow for monetary damages.  *See supra* at 8–9 n.5.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

F.4th at 216.  Both prison security and safety concerns undermine the viability of providing Plaintiff with matches as an alternative means of exercising his religious rights.  *See, e.g.*, *Malik v. Woodley*, 14 Fed. Appx. 779 (9th Cir. 2001) (holding that "prison's prohibition on burning incense in non-smoking cells is reasonably related to its penological interest in the health and safety of other prisoners").

Regarding the third *Turner* factor, which considers the impact on inmates and staff, Defendant suggests that "requiring the prison to proceed with religious programming for all inmates would have" significantly impacted prison resources.  ECF No. 43 at 11.  For support, Defendant notes that, since the beginning of the COVID-19 pandemic, there have been 438 confirmed cases for CRCC inmates and 275 confirmed cases among CRCC staff.  *Id.* (citing ECF No. 45 at 4).  Lastly, Defendant argues that "there were no readily available alternatives to accommodate group religious programming" given the need to limit "as much contact as possible between inmates themselves and inmates and staff."  *Id.* at 12.

During the initial response to the novel COVID-19 pandemic, Defendant arranged for modified sweat lodges beginning in early April 2020.  ECF No. 45 at 3.  By late May, however, 24 inmates at CRCC had tested positive for COVID-19, resulting in recommendation from prison chaplains "that all current religious gatherings be halted" at both CRCC facilities.  *Id.*  Defendant notes that "[d]ecisions to modify or cancel religious programming are not taken lightly" and "are made in

consultation with medical providers and DOC Headquarters . . . to mitigate any risk of exposure to both incarcerated individuals and staff." *Id.* at 5.

The suspension of all religious programming for almost a year at CRCC is likely unprecedented and created a substantial burden on Plaintiff's free exercise rights. At the same time, the spread of the novel COVID-19 pandemic is also relatively unprecedented, particularly in light of the changing landscape the virus caused (and continues to cause) due to new variants, the substantial reduction in prison staff who become infected, and the initial limited availability of vaccines. *See, e.g.*, *Slidewaters LLC v. Washington State Dep't of Labor and Industries*, 4 F.4th 747, (9th Cir. 2021) (describing COVID-19 as "a novel, potentially deadly, severe acute respiratory illness" that, despite restrictions by state governments "to curb the transmission of the virus[,]" has led to the infection of approximately 114.6 million people in the United States and over 600,000 deaths). Accordingly, the Court finds that Defendant's suspension of access to the prison sweat lodge and smudge pad for a period of months during the early stages of the COVID-19 pandemic was reasonably related to the legitimate penological interests of maintaining the health and safety of prisoners and staff alike.

C. Qualified Immunity

While the Court finds that Plaintiff fails to assert a valid First Amendment claim, the Court separately finds in the alternative that Defendant is entitled to qualified immunity.

The qualified immunity doctrine shields government officials from liability

for civil damages in § 1983 actions unless "(1) they violated a federal statutory or

constitutional right, and (2) the unlawfulness of their conduct was 'clearly

established at the time.'" *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct.

577, 589, 199 L. Ed. 2d 453 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664,

132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)).  A statutory or constitutional right is

"clearly established" if, "at the time of the challenged conduct, '[t]he contours of [a]

right [are] sufficiently clear' that every 'reasonable official would [have understood]

that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741,

131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483

U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)) (alterations in original).

Moreover, "existing precedent must have placed the statutory or constitutional

question beyond debate." *Id.*  In sum, qualified immunity "protects 'all but the

plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at

589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271

(1986)).

Courts "must consider 'whether the violative nature of [the defendants']

*particular* conduct is clearly established . . . in light of the *specific context* of the

case." *Rico v. Ducart*, 980 F.3d 1292, 1298 (quoting *Hamby v. Hamby*, 821 F.3d

1085, 1091 (9th Cir. 2016)) (alteration in original).  "Qualified immunity is an

affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017).

Here, the Court starts by examining whether the alleged unlawful conduct by Defendant Uttecht was "clearly established."[7]  Defendant argues that "there is no binding precedent" putting Superintendent Uttecht on notice "that limiting inmate religious activities in order to mitigate the spread of a highly contagious, and in some cases, deadly, virus amounted to a constitutional violation."  ECF No. 43 at 7.

Defendant does not cite, nor could this Court find, any controlling precedent discussing a "clearly established" right to the free exercise of inmate religious services during a novel, worldwide pandemic.  In this instance, the lack of on-point precedent supports, rather than undermines, Defendant's argument for purposes of a qualified immunity defense.

Under *Rico*, the conduct at issue, *i.e.*, suspending access to the prison sweat lodge and smudge pad, must be examined in light of the specific context of this case, which included a novel pandemic that is highly contagious in confined spaces and

---

[7] The Court considers whether Plaintiff's asserted constitutional right was "clearly established" before proceeding to a determination of whether the right was violated because "courts are now empowered to address the two prongs [of the qualified immunity doctrine] in whichever order would expedite resolution of the case." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236–39, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

was spreading rapidly through the CRCC facilities to prisoners and staff alike. ECF No. 45 at 4–5. Moreover, the Ninth Circuit upheld a state prison policy prohibiting access for inmates in the disciplinary segregation unit to the Sacred Sweat Lodge, outside of the context of a deadly disease that easily spreads through airborne transmission. *See Allen v. Toombs*, 827 F.2d 563 (9th Cir. 1987). There, the court determined that the prison policy had a valid and rational "connection between the restriction on access to the Sweat Lodge and the legitimate security concerns of [prison] administrators." *Id.* at 567.

Defendant also cites to several persuasive, albeit non-binding, cases discussing the compelling governmental interest in preventing the spread of COVID-19. *See Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (discussing the preventative measures taken by the Bureau of Prison that constituted "reasonable responses to serious risk of harm"). Several district courts upheld this same compelling interest despite the impact on the exercise of an inmate's constitutional rights. *See Wilcox v. Lacour*, No. 2:20-cv-183, 2021 WL 230113, at *8 (W.D. Mich. Jan. 22, 2021) (recognizing the legitimate penological interest in testing inmates for COVID-19 despite the Plaintiff's asserted due process violation based on the insertion of a swab deep into his nasal passage); *see also United States v. Topps*, No. 3:20-cr-12-TMB-DMS, 2020 WL 5890433, at *16 (D. Alaska Oct. 1, 2020) (upholding prison regulation in response to COVID-19 that restricted in-person

visitation for pre-trial detainees despite Plaintiff's asserted Sixth Amendment violation).

Returning to this case, Defendant has presented undisputed evidence of his and other CRCC staff's attempts to protect inmate health and safety first and foremost.  ECF Nos. 45-2, 45-4.  Moreover, the suspension of religious services at CRCC occurred only after numerous inmates began testing positive for COVID-19.  ECF No. 45 at 3–4.  Therefore, the Court finds that the contours of Plaintiff's right to freely exercise his religion by using the prison sweat lodge and smudge pad was not "clearly established" in the wake of a deadly, and highly transmissible, virus that was rapidly spreading (and continues to spread) through both CRCC facilities.  ECF No. 45 at 4–5.

## CONCLUSION

The Court recognizes that Plaintiff's inability to freely exercise important aspects of his Native American religion for at least seven months, if not longer, constituted a substantial burden on his free exercise rights.  However, the declaratory relief Plaintiff seeks is moot, both because he has been transferred to a different prison facility and given Defendant's unopposed assertion that sweat lodge and smudge pad services have been available to inmates since April 2021.

Turning to Plaintiff's request for monetary damages on his constitutional claims, the Court finds that there is a legitimate penological interest (namely, prisoner health and safety) in Defendant's policy of suspending access to the prison

sweat lodges and smudge pads in response to the COVID-19 pandemic. Regardless of the legitimacy of this penological interest, Defendant also is entitled to qualified immunity from monetary damages because Plaintiff fails to demonstrate that his free exercise right was "clearly established" under the novel context presented in this case.

Having found that Defendant is entitled to summary judgment on Plaintiff's federal statutory and constitutional claims, the Court dismisses Plaintiff's remaining state law claim under the Washington State Constitution. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion for Summary Judgment, **ECF No. 43**, is **GRANTED**.

2.    Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment for Defendant, provide copies to counsel and Plaintiff, and **close this case**.

**DATED** February 28, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19